**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

|  |  |  |
|---|---|---|
| TIMIKO HAMILTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 20-cv-2911-TMP |
| | ) | |
| SHELBY COUNTY, TENNESSEE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Before the court is defendant Shelby County's Motion to Dismiss, filed on February 11, 2021.[1] (ECF No. 12.) Plaintiff Timiko Hamilton responded to the motion on April 1, 2021. (ECF No. 18.) Shelby County filed a reply on April 7, 2021. (ECF No. 19.) For the reasons below, Shelby County's motion is GRANTED.

## I.   BACKGROUND

Plaintiff Timiko Hamilton began working for the Shelby County Division of Corrections ("SCDOC") on August 16, 2012, as a corrections officer and was promoted to sergeant on February 1, 2017. (ECF No. 1 at 2.) According to Hamilton, she has met or exceeded expectations throughout her career with SCDOC. (ECF No.

---

[1] On February 21, 2021, the parties consented to have a United States magistrate judge conduct all proceedings in this case including trial, the entry of final judgment, and all post-trial proceedings. (ECF No. 10.)

1 at 2.) Hamilton alleges she has been treated for severe anxiety and major depressive disorder, which "substantially limits, among other thing, the major life activities of working, eating, sleeping, and interacting with others." (ECF No. 1 at 2.) As a result, Hamilton requested that she be assigned to positions and responsibilities that minimized her contact with inmates. (ECF No. 1 at 2.) Since October 18, 2017, Hamilton has been involved in a Chapter 13 bankruptcy proceeding in the United States Bankruptcy Court for the Western District of Tennessee. (ECF No. 12-4 at 1.)

According to the complaint, Hamilton filed her first internal complaint of discrimination on July 14, 2017. (ECF No. 1 at 2.) Subsequently, she filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in February of 2018. (ECF No. 1 at 2.) A little over a year later, Hamilton was assigned to work in the "Papa" Building, where a group of inmates threatened to harm her. (ECF No. 1 at 2.) Hamilton alleges that she reported the threats to her supervisors but was ignored. (ECF No. 1 at 2.) Then, in April of 2019, the same inmates who had threatened her poured baby oil over a path that Hamilton routinely walked across. (ECF No. 1 at 3.) Hamilton slipped on the oil and was severely injured. (ECF No. 1 at 3.) According to Hamilton, her doctor restricted her to only sedentary activities with occasional walking or standing. (ECF No. 1 at 3.) As before, her requests for accommodations while she recovered from her injuries were ignored.

(ECF No. 1 at 3.) Additionally, Hamilton alleges she has suffered from Post-traumatic Stress Disorder since the incident. (ECF No. 1 at 3.)

Following the incident, Hamilton states she repeatedly requested that SCDOC investigate the circumstances that led to her injuries, but the investigation was delayed. (ECF No. 1 at 3.) When it eventually was conducted, the investigation was allegedly not thorough and thus did not substantiate the assault by the inmates. (ECF No. 1 at 3.) Throughout the investigation (and afterwards), Hamilton remained assigned to work in the "Papa" Building. (ECF No. 1 at 3.) Since the incident, Hamilton alleges SCDOC has not made any attempt to protect her from the inmates and, as a result, she continues to suffer from workplace violence and harassment. (ECF No. 1 at 3.) Hamilton states she is an "otherwise qualified individual with a disability as defined by the ADAAA" and "other similarly-situated individuals who have not complained about discrimination or are not disabled have been afforded all the benefits to which they are entitled without interference by the Defendant." (ECF No. 1 at 2-3.)

Hamilton filed her first lawsuit with this court on October 15, 2019. (ECF No. 1 at 4.) Her first lawsuit raised many of the same allegations as the instant complaint, such as the baby oil slip and fall incident and that her requests for accommodations for her anxiety and depression were denied. (ECF No. 12-2.) Her

first complaint included a claim for disability discrimination in violation of the Americans with Disabilities Act ("ADA"), specifically alleging that Shelby County failed to accommodate her disability, subjected her to disparate treatment, and retaliated against her because of her disability.[2] (ECF No. 12-2.) However, on June 4, 2020, Magistrate Judge Charmiane G. Claxton granted a motion for summary judgment filed by Shelby County, holding that Hamilton was judicially estopped from bringing any of her claims because she had represented to the United States Bankruptcy Court for the Western District of Tennessee that she did not have any potential causes of action that could be considered an asset of her bankruptcy estate. (ECF No. 12-3.)

According to the instant complaint, Hamilton continues to be "subjected to a hostile work environment by co-workers and supervisors, including being subjected to ridicule and derision by co-workers and supervisors." (ECF No. 1 at 4.) She alleges that her complaints regarding her treatment by inmates continue to be ignored. (ECF No. 1 at 4.) Hamilton filed a charge of discrimination with the EEOC on January 3, 2020. (ECF No. 1 at 4.) The charge reads:

I began working for [SCDOC] on August 16, 2012.

---

[2]Hamilton's first lawsuit also contained additional allegations related to charges under Title VII of the Civil Rights Act and the Family and Medical Leave Act. (ECF No. 12-2.)

On February 23, 2018, I filed a charge of employment discrimination with the EEOC (490-2018-01377). My employer has been aware of my disability since 2017. Since filing my previous charge, my request[s] for reasonable accommodations have been denied. Prior to filing my EEOC charge, I had no prior issues receiving a reasonable accommodation.

I believe I have been discriminated against because of my disability and retaliated against for engaging in a protected activity in violation of the [ADA].

(ECF No. 1-1.) She received a right-to-sue letter from the EEOC on September 23, 2020, and filed this lawsuit on December 18, 2020. (ECF Nos. 1 at 1; 1-2.) Her instant lawsuit is predicated on alleged disability discrimination in violation of the ADA, namely disparate treatment, failure to accommodate, and retaliation. (ECF No. 1 at 5.) Hamilton's Chapter 13 bankruptcy proceeding remains pending, with the instant lawsuit being listed as an asset on an Amended Schedule entered on December 18, 2020. (ECF Nos. 12-1 at 11-12; 12-4; 12-5 at 6.) On March 26, 2021, Hamilton filed a motion with the bankruptcy court for leave to hire an attorney to prosecute a non-bankruptcy civil cause of action. (ECF No. 18-1 at 1-2.) The bankruptcy court granted the motion on April 26, 2021. See In re Timiko Rochelle Hamilton, 2:17-BK-29176 (Bankr. W.D. Tenn. Apr. 26, 2021) (Dkt. No. 75).

## II.  ANALYSIS

### A.  Standard of Review

In deciding a Rule 12(b)(6) motion to dismiss, the court views the allegations in the light most favorable to the plaintiff and

accepts all well-pleaded factual allegations as true. Ashcroft v.
Iqbal, 556 U.S. 662, 678-79 (2009). Federal Rule of Civil Procedure
8(a)(2) requires only "a short and plain statement of the claim."
Fed. R. Civ. P. 8(a)(2). However, "[t]he factual allegations in
the complaint need to be sufficient to give notice to the defendant
as to what claims are alleged, and the plaintiff must plead
'sufficient factual matter' to render the legal claim plausible,
i.e., more than merely possible." Fritz v. Charter Twp. of
Comstock, 592 F.3d 718, 722 (6th Cir. 2010) (quoting Iqbal, 556
U.S. at 677). "The plausibility standard is not akin to a
'probability requirement,' but it asks for more than a sheer
possibility that a defendant has acted unlawfully." Iqbal, 556
U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557
(2007)). To satisfy this requirement, plaintiffs must plead more
than "labels and conclusions," "a formulaic recitation of the
elements of a cause of action," or "naked assertions devoid of
further factual enhancement." Id. (alteration omitted) (quoting
Twombly, 550 U.S. at 555, 557). "A claim has facial plausibility
when the plaintiff pleads factual content that allows the court to
draw the reasonable inference that the defendant is liable for the
misconduct alleged." Id.

"As a general rule, when considering a 12(b)(6) motion to
dismiss, matters outside the pleadings may not be considered by
the court." Metz v. Unizan Bank, No. 5:05-CV-1510, 2007 WL 3232431,

at *1 (N.D. Ohio Oct. 31, 2007) (citing Sims v. Mercy Hosp. of Monroe, 451 F.2d 171, 173 (6th Cir. 1971)). If matters outside the pleadings are considered by the court, the motion must be "converted to a motion for summary judgment under Fed. R. Civ. P. 56." Id. at *1 (citing Carter v. Stanton, 405 U.S. 669, 671 (1972)). Despite this general rule, "a court may consider a document outside the pleadings if the pleadings refer to it," id. at *1 (citing Jackson v. City of Columbus, 194 F.3d 737, 745 (6th Cir. 1999)), or "materials that are integral to the complaint, are public records, or are otherwise appropriate for taking judicial notice." Ashland, Inc. v. Oppenheimer & Co., Ins., 648 F.3d 461, 467 (6th Cir. 2011) (quoting Ley v. Visteon Corp., 543 F.3d 801, 805 (6th Cir. 2008)). Further, "a court may take judicial notice of other court proceedings without converting the motion into one for summary judgment." Buck v. Thomas M. Cooley Law School, 597 F.3d 812, 816 (6th Cir. 2010) (citing Winget v. JP Morgan Chase Bank, N.A., 537 F.3d 565, 576 (6th Cir. 2008)). Here, Shelby County's motion included filings from Hamilton's bankruptcy proceeding and from her first lawsuit with this court. See (ECF Nos. 12-2; 12-3; 12-4; 12-5; 12-6.) The court need not convert this motion to one for summary judgment in order to consider these documents. See Hamlin v. Baptist Mem'l. Hosp., No. 2:09-cv-02615-STA-cgc, 2011 WL 902351, at *2 n.1 (W.D. Tenn. Jan. 27, 2011) ("Although the parties have attached filings from Plaintiff's

bankruptcy proceeding as exhibits for consideration in this Motion, the Court may take judicial notice of these documents and consider them without converting Defendant's Motion into a motion for summary judgment pursuant to Rule 12(d) of the Federal Rules of Civil Procedure.").

## B.    Standing

As a preliminary matter, Shelby County argues that Hamilton's complaint must be dismissed because she had not received permission from the bankruptcy court to pursue this lawsuit in her own name. In its reply, Shelby County "acknowledge[d] the state of affairs in the bankruptcy court could change based on Plaintiff's pending motion with the bankruptcy court to appoint counsel." (ECF No. 19 at 3.) While earlier in this litigation Hamilton did not have permission to pursue this lawsuit in her own name, the bankruptcy court has since granted Hamilton's motion to hire an attorney to pursue this cause of action.[3] In re Timiko Rochelle Hamilton, 2:17-BK-29176 (Bankr. W.D. Tenn. Apr. 26, 2021) (Dkt. No. 75). As a result, the Sixth Circuit's general rule that Chapter 13 debtors do not have standing to pursue independent claims no longer precludes Hamilton from bringing this lawsuit. See generally

_____

[3]Federal courts can "take judicial notice of developments in 'related proceedings in other courts of record.'" Chase Bank USA, N.A. v. City of Cleveland, 695 F.3d 548, 553 n.2 (6th Cir. 2012) (quoting Walburn v. Lockheed Martin Corp., 431 F.3d 966, 972 n.5 (6th Cir. 2005)).

Rugiero v. Nationstar Mortg., LLC, 580 F. App'x 376 (6th Cir. 2014).

## C.  Failure to State a Claim

### 1.  *Res Judicata*

Before the court can consider the merits of Shelby County's motion, the undersigned must first consider whether any or all of Hamilton's claims are barred by *res judicata* because of the earlier lawsuit that was dismissed by this court. *Res judicata* deals with "the preclusive effect of a judgment." Taylor v. Sturgell, 553 U.S. 880, 892 (2008). In practice, *res judicata* bars subsequent claims by parties or their privies based on the same cause of action. Trent v. Shelby Cty. Gov't, No. 2:08-cv-2797-JPM-cgc, 2009 WL 6066974, at *1 (W.D. Tenn. Jul. 30, 2009) (citing Montana v. United States, 440 U.S. 147, 153 (1979)). The moving party must establish four elements for *res judicata* to apply: "1) a final decision on the merits by a court of competent jurisdiction; 2) a subsequent action between the same parties or their privies; 3) an issue in a subsequent action which was litigated or which should have been litigated in the prior action; and 4) an identity of the causes of action." Id. (citing Rivers v. Bariton Bd. of Educ., 143 F.3d 1029, 1031 (6th Cir. 1998) and Kane v. Magna Mixer Co., 71 F.3d 555, 560 (6th Cir. 1995)).

Hamilton filed a lawsuit against Shelby County in this court on October 15, 2019. This court granted Shelby County's motion for

summary judgment in the earlier case on June 4, 2020. See Brown v. Burch, Porter & Johnson Law Firm, No. 15-2167, 2015 WL 5737802, at *7 (W.D. Tenn. Sept. 30, 2015) ("The disposition of [an earlier lawsuit] by summary judgment qualifies as a final judgment on the merits.") (citing Nat'l Satellite Sports, Inc. v. Eliadis, Inc., 253 F.3d 900, 908 (6th Cir. 2001)). Therefore, the first two elements of the *res judicata* analysis are satisfied, a finding that is not disputed by Hamilton. Moreover, Hamilton concedes that "any claims that Plaintiff brought or could have brought in her 2019 Complaint are barred by the doctrine of *res judicata*." (ECF No. 18-1 at 7.); see also U.S. ex rel. Sheldon v. Kettering Health Network, 816 F.3d 399, 415 (6th Cir. 2016) ("As the 'could have' phrasing implies, [the third] element concerns only the legal possibility of bringing the disputed claims in the previous action."); Bridgeman v. City of Bedford Heights, No. 1:19-cv-3002, 2020 WL 1930116, a *3 (N.D. Ohio Apr. 21, 2020) (dismissing on *res judicata* grounds a plaintiff's claims that were available when the initial lawsuit was filed because "the term 'same cause of action' encompasses claims that 'were previously available to the parties, regardless of whether they were asserted or determined in the first proceeding'") (quoting Thomas v. Miller, 329 F. App'x 623, 627 (6th Cir. 2009)). However, Hamilton argues that the last two elements of *res judicata* are not met for claims arising after the first complaint was filed, because "the claims in the instant

action were not available to her until at least September 2020, when she received the right-to-sue." (ECF No. 18-1 at 7.); see Rawe v. Liberty Mut. Fire Ins. Co., 462 F.3d 521, 529 (6th Cir. 2006) (finding that it was error for a district court to dismiss a claim on *res judicata* grounds "because [the] alleged actions had not yet occurred at the time [plaintiff] filed the first . . . suit" and "[s]imply put, [plaintiff] could not have asserted a claim that [plaintiff] did not have at the time") (quoting Kane, 71 F.3d at 560).

Hamilton's complaint includes an allegation that "[a]fter making requests for accommodation *and the filing of her previous action against Defendant*, Plaintiff has been subjected to discriminatory and retaliatory treatment including, but not limited to, subjected to unreasonable scrutiny, investigations, and discipline," and that she has been continuously subjected to a hostile work environment. (ECF No. 1 at 4 (emphasis added).) Clearly, Hamilton could not have included in the first complaint any allegations that Shelby County discriminated against her after the first lawsuit was filed. See Cont'l Cas. Co. v. Indian Head Indus., Inc., 941 F.3d 828, 837 (6th Cir. 2019) (holding that "a party has no duty to supplement its complaint" and thus "if a plaintiff sues a defendant, and then after the filing of the first complaint the defendant engages in additional, similar wrongdoing, that plaintiff will not be barred from bringing another, later

lawsuit against the same defendant for the post-filing wrongdoing"); Rawe, 462 F.3d at 529-30 (reasoning that "*res judicata* does not apply to claims that were not ripe at the time of the first suit" and to hold otherwise would "prospectively immunize the defendant from liability for future actionable conduct") (citing Katt v. Dykhouse, 983 F.2d 690, 694 (6th Cir. 1992)). This is true even if certain facts that form the basis of the second lawsuit were alleged in the first lawsuit. See Ziba v. Kcira, No. 10-12654, 2010 WL 4636635, at *5 (E.D. Mich. Nov. 8, 2010) ("The 'fact that both suits involve essentially the same course of alleged wrongful conduct is not decisive. Such a course of conduct — for example, an abatable nuisance — may frequently give rise to more than a single cause of action.'") (quoting Cream Top Creamery v. Dean Milk Co., 383 F.2d 358, 363 (6th Cir. 1967)). Thus, the court finds that, to the extent Hamilton is seeking to assert ADA claims based on alleged violations that occurred before the first complaint was filed, those claims are precluded by *res judicata* and are subject to dismissal on that basis. On the other hand, the court finds that the doctrine of *res judicata* does not apply to Hamilton's claims that are based on conduct by Shelby County that occurred after the first complaint was filed.

　　2.　Allegations Since the First Complaint

　　Having limited Hamilton's claims to those arising after the first complaint was filed, the court now turns to the merits of

- 12 -

Hamilton's ADA claim. Though listed as a single cause of action, Hamilton's complaint raises three distinct theories of discrimination under the ADA: disparate treatment, failure to accommodate, and retaliation. (ECF No. 1 at 5.) In general, the ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Since the *prima facie* elements for employment discrimination are evidentiary standards and not pleading requirements, a plaintiff need not make a *prima facie* showing to survive a motion to dismiss. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510-12 (2002). However, the complaint must nonetheless "contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory. . . . [C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Mezibov v. Allen, 411 F.3d 712, 716 (6th Cir. 2005) (citations omitted); see also James v. Hampton, 592 F. App'x 449, 460-61 (6th Cir. 2015). Accordingly, when determining the sufficiency of a pleading at the motion to dismiss stage, courts still look to *prima facie* showing requirements for guidance. See S. Pointe Wholesale, Inc. v. Vilardi, No. 1:17-CV-00052-GNS, 2018 WL 922379, at *2-3 (W.D. Ky. Jan. 23, 2018); United

States v. Trumbull Metro. Hous. Auth., No. 4:17-CV-101, 2017 WL 4882438, at *4-5 (N.D. Ohio Oct. 30, 2017); Johnson v. Oldham, No. 16-2587-SHL-DKV, 2016 WL 7805793, at *2-3 (W.D. Tenn. Dec. 27, 2016), report and recommendation adopted, No. 16-CV-2587-SHL-DKV, 2017 WL 187561 (W.D. Tenn. Jan. 17, 2017).

     a.   Failure to Accommodate

The *prima facie* elements for a failure to accommodate claim under the ADA are: "(1) [plaintiff] was disabled within the meaning of the ADA, (2) [plaintiff] was otherwise qualified for [the] position, with or without reasonable accommodation; (3) the defendant knew or had reason to know about [plaintiff's] disability; (4) [plaintiff] requested an accommodation; and (5) the defendant failed to provide the necessary accommodation." Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Sch., 974 F.3d. 652, 669 (6th Cir. 2020) (citing Brumley v. United Parcel Serv., Inc., 909 F.3d 834, 839 (6th Cir. 2018)).

Regarding Hamilton's failure to accommodate claim, her complaint sets out only conclusory, "the-defendant-unlawfully-harmed-me" allegations. Iqbal, 556 U.S. at 678. Even assuming that Hamilton's complaint plausibly establishes that she is disabled within the meaning of the ADA and that she is qualified for her job with SCDOC, the complaint does not allege any specific facts occurring after the allegations in the first lawsuit, beyond simply reciting the elements of the claim. See id., 556 U.S. a 678 ("A

- 14 -

pleading that offers 'labels and conclusions' or "'a formulaic recitation of the elements of a cause of action will not do.'") (quoting <u>Twombly</u>, 550 U.S. at 555). Indeed, the only allegations contained in the complaint (occurring after the first complaint was filed) are that:

> Defendant has taken no steps to protect Plaintiff from attacks by inmates . . . . Plaintiff has continued to suffer from acts of workplace violence and harassment, of which Defendant is aware and which Defendant allows to take place.
>
> . . .
>
> After making requests for accommodation and the filing of her previous action against Defendant, Plaintiff has been subjected to discriminatory and retaliatory treatment including, but not limited to, subjected to unreasonable scrutiny, investigations, and discipline.
>
> Plaintiff has been subjected to a hostile work environment by co-workers and supervisors, including being subjected to ridicule and derision by co-workers and supervisors. Her complaints about this treatment have been ignored.

(ECF No. 1 at 2-3.) Her charge of discrimination with the EEOC provides no more details, as it states only that "My employer has been aware of my disability since 2017. Since filing the previous charge, my request for reasonable accommodations have been denied. Prior to filing my EEOC charge, I had no prior issues receiving a reasonable accommodation." (ECF No. 1-1.) Hamilton does not provide any facts whatsoever regarding when she requested any accommodations, what the requested accommodations were, or provide any context for how Shelby County failed to accommodate these

requests.[4] Merely stating accommodations were requested and that those requests were ignored is insufficient to survive a motion to dismiss. See Eachus v. Haslam, No. 3:15-cv-944, 2016 WL 323675, at *8 (M.D. Tenn. Jan. 27, 2016) (granting a motion to dismiss regarding an ADA failure to accommodate claim because the complaint did "not contain any factual allegations describing or identifying any accommodation that [plaintiff] needed in order to be able to perform her duties, the reasonableness of that accommodation, any request she made for that accommodation, or any denial by the defendants of her request").

    b.    Disparate Treatment

    The prima facie elements for an ADA disparate treatment claim are: "1) [plaintiff] was disabled; 2) [plaintiff] was otherwise qualified for the job, with or without reasonable accommodation; 3) [plaintiff] suffered an adverse employment decision; 4) [plaintiff's] employer knew or had reason to know of [plaintiff's] disability; and 5) similarly situated employees were treated more favorably." O'Donnell v. Univ. Hosps. Cleveland Med. Ctr., 833 F. App'x 605, 619 (6th Cir. 2020) (citing Rosebrough v. Buckeye Valley

---

[4]According to the complaint, Hamilton "requested to be assigned to positions with minimal contact with inmates, such as in control units" and that "[d]espite making repeated requests for accommodation, Defendant has failed to accommodate Plaintiff's disabilities." (ECF No. 1 at 2.) These requests appear to be the same allegations that were included in the first complaint. (ECF No. 12-2 at 4, 8.)

High School, 582 F. App'x 647, 651 (6th Cir. 2014)). As before, Hamilton's complaint does not plead sufficient facts to overcome a motion to dismiss on this claim. Although the court must take all facts in the light most favorable to Hamilton, the complaint at most plausibly alleges that Hamilton is disabled, that she is qualified for the position, and that Shelby County was aware of her disability. To the extent Hamilton's complaint alludes to the remaining two elements (that she suffered an adverse employment decision and that a similarly-situated employee was treated more favorably), the complaint does little more than recite the bare elements of a *prima facie* claim for disparate treatment under the ADA. See Iqbal, 556 U.S. at 687 ("[Federal] Rule [of Civil Procedure] 8 does not empower respondent to plead the bare elements of his cause of action . . . and expect his complaint to survive a motion to dismiss.").

Turning first to Hamilton's alleged adverse employment decision, the Sixth Circuit defines an adverse employment action as "a "materially adverse change in the terms or conditions of . . . employment because of [the] employer's conduct.'" Stewart v. Esper, 815 F. App'x 8, 16 (6th Cir. 2020) (quoting Mitchell v. Vanderbilt Univ., 389 F.3d 177, 182 (6th Cir. 2004)). The hallmark of an adverse employment decision is a "significant change in employment status," such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a

decision causing a significant change in benefits." Id. at 16-17 (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761, (1998)). However, a *de minimis* employment action or a "[r]eassignment[] without changes in salary, benefits, title, or work hours" is not an adverse employment action." Id. at 16 (quoting Policastro v. Nw. Airlines, Inc., 297 F.3d 535, 539 (6th Cir. 2002) and citing Bowman v. Shawnee State Univ., 220 F.3d 456, 462 (6th Cir. 2000)). In the instant case, the complaint states only that "Plaintiff has been subjected to discriminatory and retaliatory treatment including, but not limited to, subjected to unreasonable scrutiny, investigations, and discipline" and that she has been "subjected to ridicule and derision by co-workers and supervisors." (ECF No. 1 at 4.) Not only do these allegations fail to allege any significant change in Hamilton's employment status, but they also do not provide any details as to when or how she was investigated or disciplined, or that her employment status changed in any meaningful way. See O'Donnell, 833 F. App'x at 619-20 ("These allegations are simply the type of complaints that arise in a difficult professional environment. None of them amounted to any sort of change in pay or benefits, nor in title, nor constituted any type of demotion."). Moreover, being ridiculed and derided is not an adverse employment action. See Stewart, 815 F. App'x at 19 (holding that "spreading rumors" and "offensive comments" are not adverse employment actions because they "fall[]

into the category of 'petty slights or minor annoyances that often take place at work' but that are not materially adverse") (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)). This is insufficient to plausibly allege an adverse employment action.

Likewise, Hamilton's complaint does not adequately identify any similarly-situated employees who were treated more favorably. "To be considered 'similarly situated, the individuals with whom [plaintiff] seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" Jones v. Potter, 488 F.3d 397, 405 (6th Cir. 2007) (quoting Gray v. Toshiba Am. Consumer Prods., 263 F.3d 595, 599 (6th Cir. 2001)); see also Smith v. Wrigley Mfg. Co., 749 F. App'x 446, 448 (6th Cir. 2018) (holding that, in the Title VII context, a plaintiff must provide "specifics regarding the other employees or their differing treatment" such as "names, ages, or qualifications for the [similar] employees who were treated differently, or any examples of how their treatment differed" in order to survive a motion to dismiss). The only mention of any other employees in the complaint is that "[u]pon information and belief, other similarly-situated individuals who have not complained about discrimination or are not disabled have

- 19 -

been afforded all the benefits to which they are entitled without interference by the Defendant." (ECF No. 1 at 3.) Because Hamilton's complaint merely alleges that she believes a similarly-situated individual may exist, it fails to plausibly allege the final element of an ADA disparate treatment claim and must be dismissed.

### c.   Retaliation

The *prima facie* elements for an ADA retaliation claim are "(1) [plaintiff] engaged in activity protected under the ADA; (2) the employer knew of that activity; (3) the employer took an adverse action against plaintiff; and (4) there was a causal connection between the protected activity and the adverse action." Morrissey v. Laurel Health Care Co., 946 F.3d 292, 304 (6th Cir. 2019) (quoting Rorrer v. City of Stow, 743 F.3d 1025, 1046 (6th Cir. 2014)). In the retaliation context, an adverse employment action is one that "well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Burlington N., 548 U.S. at 68 (quoting Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). Regarding this claim, it cannot be disputed that Hamilton engaged in activity protected by the ADA (for instance, filing the first lawsuit) and that Shelby County was aware of the protected activity. However, Hamilton's complaint does not sufficiently plead a materially adverse action that would have dissuaded a reasonable person from making or supporting a

charge of discrimination. Shaw v. Donahoe, 605 F. App'x 494, 496-500 (6th Cir. 2015) (granting summary judgment and dismissing an ADA retaliation claim in part because several of her alleged adverse employment actions were insufficient to "dissuade[] a reasonable worker from making or supporting a charge of discrimination") (quoting Burlington N., 548 U.S. at 69 and citing Laster v. City of Kalamazoo, 746 F.3d 714, 719 (6th Cir. 2014)). Indeed, the only allegations in the complaint to support her retaliation claim are that Hamilton was "subjected to unreasonable scrutiny, investigations, and discipline" and that she has been "subjected to ridicule and derision by co-workers and supervisors," all of which are conclusory in nature. (ECF No. 1 at 4.); see Ctr. for Bio-Ethical Reform, Inc. v. Napolitano, 648 F.3d 365, 375 (6th Cir. 2011) (holding that conclusory allegations are "not well-pleaded" and are not entitled to a presumption of truth) (citing Iqbal, 556 U.S. at 681). Because Hamilton's complaint does not sufficiently plead an adverse action, her claim for retaliation cannot survive a motion to dismiss. See HDC, LLC v. City of Ann Arbor, 675 F.3d 608, 613 (6th Cir. 2012) ("[B]road and conclusory allegations of discrimination cannot be the basis of a complaint and a plaintiff must state allegations that plausibly give rise to the inference that a defendant acted as the plaintiff claims.").

## III. CONCLUSION

For the reasons above, the court GRANTS Shelby County's motion. Hamilton's complaint is hereby dismissed.[5]

IT IS SO ORDERED.

/s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

May 4, 2021
Date

---

[5]Pleading deficiencies like those in Hamilton's complaint may be remedied by amending the complaint under Federal Rule of Civil Procedure 15. However, Hamilton has not requested leave to amend her complaint in her response to the motion to dismiss. The court is under no obligation to *sua sponte* grant a represented plaintiff leave to amend deficiencies in a complaint. See Brown v. Matauszak, 415 F. App'x 608, 615-16 (6th Cir. 2011) ("[A] district court's failure to grant leave to amend a complaint generally is governed by an abuse of discretion standard. There is currently no rule of law in this circuit that requires a district court, *sua sponte*, to give a . . . plaintiff leave to amend [her] complaint absent a request, and so generally, a district court does not abuse its discretion in failing to grant a party leave to amend where such leave is not sought.") (internal citations omitted).